Karen Spigner Counterclaim
22 CVD 004610

Gateway Plaza LLC
Greensboro Housing Authority (HUD)



Rev. 6/03

UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Karen D. Spigner
Plaintiff,
v.

Gateway Plaza LLC
Greensboro Housing Authority
Defendants.

Civil Action No.: 1:22CV1048
(to be assigned by the Clerk)

Breach of Contract IN Violation of Fair Housing Laws

Housing Choice Program Contracts

I    Jurisdiction and Venue

     A. This Court has jurisdiction over claims brought pursuant Federal Fair Housing laws. See 28 U.S.C. §§ 1331, 1345 ; see also 31 U.S.C. § 3732(a). . This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that the claims alleged herein arise under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear and determine plaintiffs' state law claims because those claims are related to plaintiffs' federal law claims and arise out of a common nucleus of related facts. Plaintiffs' state law claims are related to plaintiffs' federal claims such that those claims form part of the same case or controversy under Article III of the United States Constitution.

     B. Venue is proper in the Greensboro (Guilford County< North Carolina, because Defendant resides in this judicial district and division. 28 U.S.C. § 1391(b). Venue is also proper pursuant to

II    Parties

     A. Plaintiff          Karen Spigner, 63, resides at 200 Gateway Plaza LLC (GHA) apt 1205, a dwelling under the Fair Housing Act, 42 U.S.C. § 3602(b), between March 2014 to the present (October 2022) Plaintiff is considered a pre-rad tenant and currently has a status of a Section 8 Choice Mobility Tenant and has requested a to move within the same jurisdiction, and submitted a request reasonable accommodation in order to afford me equal opportunity to use and enjoyment and to enhance

Page 1 of 8
F:\NC JUDICIAL BRANCH APPEAL\10-24-2022 Pro Se Middle District.docx

Case 1:22-cv-01048 Document 2 Filed 12/06/22 Page 1 of 8

employment opportunities and economic self-sufficiency. This has been repeatedly denied in violation of my rights under federal, state and HUD statutes

B. *Defendant* Gateway Plaza Greensboro LLC is a Limited Liability Company whose resident agent is James Cox. The street and mailing address and county of the initial registered office of the limited liability company are 4309 Emperor Boulevard, Winchester Place Suite 225, Durham, North Carolina 27703, Durham County. The name of the initial registered agent is James Cox, CEO. The street and mailing address and county of the principal office of the limited liability company are 450 N. Church Street, Greensboro, North Carolina 27406, Guilford County. The company is a manager-managed limited liability company owned by the Quasi-Public Corporation, Greensboro Housing Authority is a Public Housing Authority under the auspices of Housing and Urban Development (HUD). The street and mailing address and county of the principal office of the limited liability company are 450 N. Church Street, Greensboro, North Carolina 27406, Guilford County, and the President is James Cox. Each defendant is the principal, agent, partner, co-venturer, or co- conspirator of each other defendant. Each defendant is vicariously liable for the injuries caused by each other defendant.

III Statement of Claim

A. Breach of Tenant/ Landlord Contract
   a. Housing Choice managers and administrators of GHA and Gateway Plaza, LLC have consistently denied Plaintiff's right to move/transfer Plaintiff's voucher as agreed to in our binding lease agreement and informed Plaintiff that I must go on a waiting list.

   This is in direct contrast to HUD CFR 982.203 Special admission (non-waiting list): Assistance targeted by HUD 982.203 Special admission (non-waiting list). They insisted that they are not obligated to abide by the regulation, at which point,

   Plaintiff placed herself on the waiting list on September 2018 When Plaintiff informed the respondents that Plaintiff was on the waiting list they informed Plaintiff she needed to reapply because they no longer use the portal, Plaintiff applied in. Although Plaintiff adamantly disagree with this, Plaintiff reapplied 05/21/2021. Plaintiff's initial waiting list application was on 1/24/2018.

   Gateway Plaza has repeatedly informed Plaintiff and other resident as early as July 2019 that there were no vouchers available for tenants of Gateway Plaza. Additionally, I was unfairly terminated from the FSS program due my inability to finish my last semester due to the NC Universities being closed during the pandemic.

   FSS also denied my right to apply for a homeownership voucher on stating Lease to Home is not permitted (Tiffany Dunlap)

   Tina Gray, is the coordinator Director of the Voucher program and she states adamantly she is not required to tell e whee I a on t heist nor is she mandated to abide by the CFR Rules on Ped Rad ersidents

B. Fair Housing Violation Choice Mobility Voucher and Portability
   a. Managers and administrators of GHA and Gateway Plaza, LLC have consistently denied Plaintiff's right to move/transfer Plaintiff's voucher as agreed to in our binding lease agreement and informed Plaintiff that I must go on a waiting list. This is in direct contrast to HUD CFR 982.203 Special admission (non-waiting list): Assistance targeted by HUD 982.203 *Special*

*admission (non-waiting list).* They insisted that they are not obligated to abide by the regulation, at which point, Plaintiff placed herself on the waiting list on September 2018 *When Plaintiff informed the respondents that Plaintiff was on the waiting list they informed Plaintiff she needed to reapply because they no longer use* the portal, Plaintiff applied in. Although Plaintiff adamantly disagree with this, Plaintiff reapplied 05/21/2021. Plaintiff's initial waiting list application was on 1/24/2018. Gateway Plaza has repeatedly informed Plaintiff and other resident as early as July 2019 that there were no vouchers available for tenants of Gateway Plaza. Additionally, I was unfairly terminated from the FSS program due my inability to finish my last semester due to the NC Universities being closed during the pandemic. FSS also denied my right to apply for a homeownership voucher on a leas option stating it was not allowed

C. False Claims Act: 31 U.S. Code. §3729

After filing an official complaint several times with the PHA Administrators, Plaintiff begin to experience harassment fraudulent adjustments to Plaintiff's rent in violation of 31 U.S. Code. §3729 - False Claims Act, which resulted in several eviction notices to hinder Plaintiff's efforts in gaining permission to move Plaintiff's voucher and leave this facility
   a. Management begins without cause adjusting Plaintiff's paid rent to reflect Plaintiff owed more than Plaintiff did by assigning Plaintiff's rent paid to balance owed instead of crediting the account with payments.
   b. On 2-11 Plaintiff received a notice from building manager of termination in the amount of $362.00
   c. On 2-25 Plaintiff received a rent statement in the amount of $818.00
   d. On 3-3 E-bill Express indicates $906.00> One week later Plaintiff received a notice of termination for rent owned in excess of $2000, after going to court for the rent was adjusted to 635 and subsequently both the manager and social worker (who suggested Plaintiff pay) were terminated
   e.

D. Violation of Tenants Rights to Participate

In 2020, a housing employee interfered with the Resident Council Elections by removing the plaintiff from the poll the day before the election and appointing a friend without due election and violation of interference with resident council elections in violation of U.S.C. 1437d, 1437g, 1437r and 3535and 24 C F R 42 964. The Official appeal was ignored and was never addressed by the Housing Authority.

E. Violation of Tenant Confidentiality / Invasion of Privacy
   a. Building manager continuously violates the HUD's strict policy on *Personally IdentifiableInformation (PII)* as she allows various tenants to deliver folded and unsealed notices pertaining to *Resident* accounts, evictions and containing other personal Information
   b. Removing tenant files from the facility in violation of confidentiality laws
   c. Both the building manager and the social worker called family members to inquire about an implied disability
   d. Law Enforcement is allowed access to tenant files and have master keys to administrative offices as well as the electronic cables room in which they have installed their own computers and monitoring systems
F. Retaliation and Harassment

Case 1:22-cv-01048   Document 2   Filed 12/06/22   Page 3 of 8

   a. Management threatened to evict Plaintiff because of a sporadic employment in disregard to HUD Federal policy
   b. Management then entered Plaintiff's apartment under the pretense of an inspection and then sent notice that she would evict Plaintiff for having two pets that she could not locate paperwork on. This is as a result of files being removed from the office
   c. Intimidating and threatening the Plaintiff person because the plaintiff complained, testified, assisted, or participated in any manner in a proceeding under the Fair Housing Act. And 'by Retaliating against any person because that person reported a discriminatory housing practice to a housing provider or other authority. Each of these violations of injured plaintiff; accordingly, each is an aggrieved person entitled to relief under the Fair Housing Act, 42 U.S.C. § 3613; 24 CFR § 100.400

IV. Owner's Breach of HAP Contract

Any of the following actions by the owner (including a principal or other interested party) is a breach of the HAP contract by the owner:

1. If the owner has violated any obligation under the HAP contract, including the owner's obligation to maintain the unit in accordance with the HQS.
2. If the owner has violated any obligation under any other housing assistance payments contract under Section 8.
3. (3) If the owner has committed fraud, bribery or any other corrupt or criminal act in connection with any Federal housing assistance program.
4. For projects with mortgages insured by HUD or loans made by HUD, if the owner has failed to comply with the regulations for the applicable mortgage insurance or loan program, with the mortgage or mortgage note, or with the regulatory agreement; or if the owner has committed fraud, bribery or any other corrupt or criminal act in connection with the mortgage or loan.
5. If the owner has engaged in any drug-related criminal activity or any violent criminal activity.
6. If the PHA determines that a breach has occurred, the PHA may exercise any of its rights and remedies under the HAP contract, or any other available rights and remedies for such breach. The PHA shall notify the owner of such determination, including a brief statement of the reasons for the determination. The notice by the PHA to the owner may require the owner to take corrective action, as verified or determined by the PHA, by a deadline prescribed in the notice.

The PHA's rights and remedies for owner breach of the HAP contract include recovery of overpayments, suspension of housing assistance payments, abatement or other reduction of housing assistance payments, termination of housing assistance payments, and termination of the HAP contract.

The PHA may seek and obtain additional relief by judicial order or action, including specific performance, other injunctive relief or order for damages.

Even if the family continues to live in the contract unit, the PHA may exercise any rights and remedies for owner breach of the HAP contract.

The PHA's exercise or non-exercise of any right or remedy for owner breach of the HAP contract is not a waiver of the right to exercise that or any other right or remedy at any time.

PHA and HUD Access to Premises and Owner's Records

> The owner must provide any information pertinent to the HAP contract that the PHA or HUD may reasonably require.

The PHA, HUD and the Comptroller General of the United States shall have full and free access to the contract unit and the premises, and to all accounts and other records of the owner that are relevant to the HAP contract, including the right to examine or audit the records and to make copies.

The owner must grant such access to computerized or other electronic records, and to any computers, equipment or facilities containing such records, and must provide any information or assistance needed to access the records.

### Exclusion of Third Party Rights

> The family is not a party to or third party beneficiary of Part B of the HAP contract. The family may not enforce any provision of Part B, and may not exercise any right or remedy against the owner or PHA under Part B.

> The tenant or the PHA may enforce the tenancy addendum (Part C of the HAP contract) against the owner, and may exercise any right or remedy against the owner under the tenancy addendum.

> The PHA does not assume any responsibility for injury to, or any liability to, any person injured as a result of the owner's action or failure to act in connection with management of the contract unit or the premises or with implementation of the HAP contract, or as a result of any other action or failure to act by the owner.

> The owner is not the agent of the PHA, and the HAP contract does not create or affect any relationship between the PHA and any lender to the owner or any suppliers, employees, contractors or subcontractors used Previous editions are obsolete form HUD-52641 (7/2019) by the owner in connection with management of the contract unit or the premises or with implementation of the HAP contract.

### Conflict of Interest

> "Covered individual" means a person or entity who is a member of any of the following classes:

> Any present or former member or officer of the PHA (except a PHA commissioner who is a participant in the program);

> (2) Any employee of the PHA, or any contractor, sub-contractor or agent of the PHA, who formulates policy or who influences decisions with respect to the program;

> (3) Any public official, member of a governing body, or State or local legislator, who exercises functions or responsibilities with respect to the program; or (4) Any member of the Congress of the United States.

>> A *covered individual* may not have any direct or indirect interest in the HAP contract or in any benefits or payments under the contract (including the interest of an immediate family member of such covered individual) while such person is a covered individual or during one year thereafter.

>> "Immediate family member" means the spouse, parent (including a stepparent), child (including a stepchild), grandparent, grandchild, sister or brother (including a stepsister or stepbrother) of any covered individual.

The owner certifies and is responsible for assuring that no person or entity has or will have a prohibited interest, at execution of the HAP contract, or at any time during the HAP contract term.

If a prohibited interest occurs, the owner shall promptly and fully disclose such interest to the PHA and HUD.

The conflict of interest prohibition under this section may be waived by the HUD field office for good cause. g. No member of or delegate to the Congress of the United States or resident commissioner shall be admitted to any share or part of the HAP contract or to any benefits which may arise from it.

## Assignment of the HAP Contract

The owner may not assign the HAP contract to a new owner without the prior written consent of the PHA.

If the owner requests PHA consent to assign the HAP contract to a new owner, the owner shall supply any information as required by the PHA pertinent to the proposed assignment.

The HAP contract may not be assigned to a new owner that is debarred, suspended or subject to a limited denial of participation under HUD regulations (see 24 Code of Federal Regulations Part 24).

The HAP contract may not be assigned to a new owner if HUD has prohibited such assignment because:

The Federal government has instituted an administrative or judicial action against the owner or proposed new owner for violation of the Fair Housing Act or other Federal equal opportunity requirements, and such action is pending; or (2) A court or administrative agency has determined that the owner or proposed new owner violated the Fair Housing Act or other Federal equal opportunity requirements.

The HAP contract may not be assigned to a new owner if the new owner (including a principal or other interested party) is the parent, child, grandparent, grandchild, sister or brother of any member of the family, unless the PHA has determined (and has notified the family of such determination) that approving the assignment, notwithstanding such relationship, would provide reasonable accommodation for a family member who is a person with disabilities.

The PHA may deny approval to assign the HAP contract if the owner or proposed new owner (including a principal or other interested party):

Has violated obligations under a housing assistance payments contract under Section 8;

Has committed fraud, bribery or any other corrupt or criminal act in connection with any Federal housing program;

Has engaged in any drug-related criminal activity or any violent criminal activity;

Has a history or practice of non-compliance with the HQS for units leased under the Section 8 tenant-based programs, or non-compliance with applicable housing standards for units leased with project-based Section 8 assistance or for units leased under any other Federal housing program;

Has a history or practice of failing to terminate tenancy of tenants assisted under any Federally assisted housing program for activity engaged in by the tenant, any member of the household, a guest or another person under the control of any member of the household that:

Threatens the right to peaceful enjoyment of the premises by other residents;

Threatens the health or safety of other residents, of employees of the PHA, or of owner employees or other persons engaged in management of the housing;

Threatens the health or safety of, or the right to peaceful enjoyment of their residents by, persons residing in the immediate vicinity of the premises; or

Is drug-related criminal activity or violent criminal activity;

Has a history or practice of renting units that fail to meet State or local housing codes; or (7) Has not paid State or local real estate taxes, fines or assessments.

g. The new owner must agree to be bound by and comply with the HAP contract. The agreement must be in writing, and in a form acceptable to the PHA. The new owner must give the PHA a copy of the executed agreement.

Reserved

Written Notices Any notice by the PHA or the owner in connection with this contract must be in writing.

Entire Agreement: Interpretation

The HAP contract contains the entire agreement between the owner and the PHA.

The HAP contract shall be interpreted and implemented in accordance with all statutory requirements, and with all HUD requirements, including the HUD program regulations at 24 Code of Federal Regulations Part 982.

### V  Prefiling Attempts to Resolve This Action

Plaintiff has attempted to resolve this on multiple occasions for the last 3 years through the Greensboro Housing Authority with no success

Plaintiff has contacted the local Housing and Urban Development office in Greensboro as well as the Atlanta office with no success

Plaintiff has contacted Legal Aid for assistance with no success

Plaintiff reached out to a HIUD Portfolio Management Specialist (Compliance) who suggested Plaintiff take it back to the Greensboro Housing Authority, Plaintiff never heard from her again

Reached out to the NC Justice Center (Before the revision to the Disparate Rule) who felt Plaintiff did not qualify for Fair Housing Submitted Form 903 to Office of Fair Housing and Equal Opportunity – Disqualified Finally Plaintiff reached out to Plaintiff's Congress and Senate representatives – with no response

Reached out to Public and Indian Housing Customer Service Center (NC) "Maynor" who informed me he does not handle Greensboro (Guilford) County

### PRAYER OF RELIEF

Wherefore, plaintiffs pray for entry of a judgment that:

Awards compensatory damages to Karen Spigner.

Awards punitive damages to Karen Spigner under her federal claims only

Immediate release/issuance of Housing Choice Voucher

Signed this_day of 12/6, 20 2022

*/s/ Karen D. Spigner*

Karen Denise Spigner
200 Spring Garden Street UNIT 12205
Greensboro NC  27401-2742
336-763-3655 H
336-769-3653 F
kd_nee_parks@outlook.com